# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: <u>1:25–mj–00270–RML</u> All Defendants

Case title: USA v. Smith et al

Date Filed: 09/15/2025

Assigned to: Magistrate Judge Robert M. Levy

**<u>Defendant (1)</u>**

**Vickie Smith**

represented by **Michael Daniel Weil**
Federal Defenders of New York NY
NY
One Pierrepont Plaza
16th Floor
Brooklyn, Ste 16th Floor
Brooklyn, NY 11201
718–407–7413
Email: <u>michael_weil@fd.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**<u>Pending Counts</u>**

None

**<u>Disposition</u>**

**<u>Highest Offense Level (Opening)</u>**

None

**<u>Terminated Counts</u>**

None

**<u>Disposition</u>**

**<u>Highest Offense Level (Terminated)</u>**

None

**<u>Complaints</u>**

None

**<u>Disposition</u>**

Assigned to: Magistrate Judge Robert M. Levy

**<u>Defendant (2)</u>**

**Tochukwu Godwin Nwaneri**            represented by  **Jeffrey Pittell**
*also known as*                                        Maher & Pittell, LLP
Dr. Simon Godwin                                       Suite 302
*also known as*                                        299 E. Shore Road
Tochil Nwaneri                                         Great Neck, NY 11023
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: CJA Appointment*

**Pending Counts**                                     **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                  **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                         **Disposition**

None

**Plaintiff**

**USA**                                    represented by  **Andres Palacio**
                                                       DOJ–USAO
                                                       Eastern District of New York
                                                       271A Cadman Plaza East
                                                       Brooklyn, NY 11201
                                                       718–254–6215
                                                       Email: Andres.Palacio@usdoj.gov
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Government Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2025 | 9 | COMMITMENT TO ANOTHER DISTRICT as to Vickie Smith. Defendant committed to District of Idaho. Ordered by Magistrate Judge Robert M. Levy on 9/16/2025. (DW) (Entered: 09/17/2025) |
| 09/16/2025 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: Detention Hearing as to Vickie Smith held on 9/16/2025. AUSA Andres Palacio present. Defendant present with FDNY Michael Weil. Defense counsel stated on the record that |

| | | |
|---|---|---|
| | | they did not have a bail application to present. Commitment order entered. Medical Memo entered. (Time Log #11:49–11:52 9/16/2025.) (DW) (Entered: 09/17/2025) |
| 09/16/2025 | 8 | Letter *re Detention Memo* as to Tochukwu Godwin Nwaneri (Palacio, Andres) (Entered: 09/16/2025) |
| 09/16/2025 | 7 | Letter *re Detention Memo* as to Vickie Smith (Palacio, Andres) (Entered: 09/16/2025) |
| 09/15/2025 | 6 | TEMPORARY COMMITMENT Issued as to Vickie Smith (SMY) (Entered: 09/16/2025) |
| 09/15/2025 | 5 | WAIVER of Rule 5(c)(3) Hearing by Vickie Smith (SMY) (Entered: 09/16/2025) |
| 09/15/2025 | 4 | CJA 20 as to Tochukwu Godwin Nwaneri: Appointment of Attorney Jeffrey Pittell for Tochukwu Godwin Nwaneri.. Ordered by Magistrate Judge Robert M. Levy on 9/15/2025. (SMY) (Entered: 09/16/2025) |
| 09/15/2025 | 3 | WAIVER of Rule 5(c)(3) Hearing by Tochukwu Godwin Nwaneri (SMY) (Entered: 09/16/2025) |
| 09/15/2025 | 2 | COMMITMENT TO ANOTHER DISTRICT as to Tochukwu Godwin Nwaneri. Defendant committed to District of District of Idaho.. Ordered by Magistrate Judge Robert M. Levy on 9/15/2025. (SMY) (Entered: 09/16/2025) |
| 09/15/2025 | | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy :Initial Appearance in Rule 5(c)(3) Proceedings as to Vickie Smith, Tochukwu Godwin Nwaneri held on 9/15/2025, Attorney Appointment of federal defender Michael Weil for defendant Vickie Smith, and cja counsel Jeff Pittell for defendant Tochukwu Godwin Nwaneri held on 9/15/2025. AUSA Andy Palacio. (Time Log #4;06–4;43.) Defendants arraigned on a removal complaint to the District of Idaho. Government seek detention as to both defendants, for reasons stated on the record. Defendant Nwaneri consent to removal in custody. Commitment Order to District of Idaho entered. Defense counsel for Smith presented a bail package. Gov't opposed. Bail hearing continued to 9/16/25 at 11am. Temporary order of detention entered as to dft Smith. Both defendants waived their identity hearing. Rule 5f order read into the record. (SMY) (Entered: 09/16/2025) |
| 09/15/2025 | 1 | RULE 40 AFFIDAVIT / removal complaint to the District of Idaho by USA as to Vickie Smith, Tochukwu Godwin Nwaneri. Signed by Judge Robert Levy dtd 9/15/25. (SMY) (Entered: 09/16/2025) |

AO 94  (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of New York ▾

| United States of America | ) |
| v. | ) |
| Vickie Smith | ) Case No. 25MJ270 |
| *Defendant* | ) |
| | ) Charging District's |
| | ) Case No. 25 CR272 (BLW) |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ District of Idaho ,

*(if applicable)* _____ division.  The defendant may need an interpreter for this language:

_____ .

The defendant:    ☐ will retain an attorney.

☑ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date: 9/16/25 _____                    ████████████████████

*Printed name and title*



**U.S. Department of Justice**

*United      States      Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 15, 2025

<u>By ECF and E-mail</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: United States v. Tochukwu Godwin Nwaneri
       <u>Criminal Docket No. 25-MJ-270</u>

Dear Judge Levy:

   The defendant Tochukwu Nwaneri, also known as "Dr. Simon Godwin" and "Tochil Nwaneri," is scheduled to for an initial appearance today pursuant to Fed. R. Crim. P. 5 today on an indictment issued from the District of Idaho, which charges him with: (i) wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349; (ii) wire fraud, in violation of Title 18, United States Code, Section 1343; (iii) money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and (iv) money laundering, in violation of Title 18, United States Code, Section 1957. <u>See</u> ECF No. 4 (Case No. 1:25-cr-00272-BLW, District of Idah). The defendant, along with his co-defendant Vickie Smith, were arrested on September 13, 2025 at John F. Kennedy International Airport just prior to boarding an international flight to Morrocco, continuing on to Abuja, Nigeria. The defendant will make his first appearance this afternoon before Your Honor. The government respectfully submits this letter in support of its application for an order of detention.

   As described below and in the indictment, the defendant and his co-defendant, Vickie Smith, perpetrated an advanced-fee fraud scheme that resulted in more than $20 million of in losses by a victim located in the District of Idaho. Detention is necessary here because the defendant presents a serious risk of flight. Given that Nwaneri is a Nigerian citizen, his use of multiple identity documents, his lack of ties to the United States, the nature of the charged conduct, the penalties he faces, and the strong evidence of his guilt, the history and characteristics of the defendant, there is no condition or combination of conditions that can reasonably secure his appearance in court. He should therefore be detained.

I.  <u>Legal Standard</u>

   Under the Bail Reform Act, 18 U.S.C. § 3141 <u>et seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

II.    Proffered Facts Regarding the Defendant's Crimes

The government proffers the following facts concerning the charges at issue and pretrial detention. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing).

Beginning in or around August 2023 and continuing through present, the defendant — a citizen of Nigeria — participated in an advanced fee fraud scheme targeting the victim, business owner in Caldwell, Idaho. Beginning in or around mid- 2023, the victim began seeking funding for his businesses through debt financing. The victim was introduced to the defendant, Nwaneri, who was posing as "Dr. Simon Godwin." Nwaneri claimed he could facilitate a $140 million loan from a Singapore-based investment group in exchange for various advance fee payments. Between November 2023 and April 2025, Nwaneri and his co-defendant, Smith, tricked the victim into sending more than twenty wire transfers to various domestic and foreign bank accounts, totaling more than $20 million. Nwaneri and Smith, using the name "Nina Cheliyan," among others, provided the victim with various false explanations about the purposes of the funds including payments for multiple risk analysis reports, "logistic fees," 2% bond requirements, legal fees, and fees to release the purported funds from various bank accounts. In reality, as Nwaneri and Smith knew, there were no loan funds to be disbursed to the victim and the various payments the victim sent pursuant to the defendants' instructions were used for the defendant's personal expenses, purchase of assets such as luxury cars and real property, and transferred to foreign bank accounts, including accounts in the United Kingdom, China, South Africa, and Nigeria.

III.    Argument

Here, the Bail Reform Act factors counsel strongly in favor of detention. The government has met its burden to show by a preponderance of the evidence that if released, the defendant poses a serious flight risk.

A.    Nature of the Crimes Charged

The nature and circumstances of the charged crimes —wire fraud conspiracy, money laundering conspiracy, wire fraud, and money laundering — are very serious. The defendant, using a false name to conceal his identity, participated in a fraud scheme to defraud the victim by stealing more than $20 million. The defendant and his co-defendant, Smith, directed the victim to transfer funds to numerous different accounts, including an account held in the name of a purported charity, and then frequently transferred the funds to other accounts to conceal the location, source, and nature of those funds. Other times, they used the funds to purchase assets such as a Mercedez Benz, Range Rover, BMW, and real property. The defendants lied

2

to the victim, claiming that the victim was under investigation by foreign authorities in order to pressure the victim into continuing to send funds. And even once the fraud was detected in May 2025 by legal authorities abroad and in the U.S., the defendants urged the victim to lie to the authorities in an effort to continue obtaining funds from the victim and told the victim he would go to jail if he told the truth. The defendants also pressured the victim to lie to his domestic banks about the source of the funds and to send letters explaining that the funds he transferred to the defendants were for legitimate purposes.

B.    The Weight of the Evidence

The evidence that the defendants defrauded the victim through an advanced fee scheme is strong. The evidence in this case includes: (1) witness testimony and records about the fraudulent conduct; (2) audio recordings; (3) WhatsApp and email communications; and (4) IP address records. See United States v. Rounds, 2015 WL 6604007, at *1 (2d Cir. Oct. 30, 2015) (finding that the "gravity of the charges and the strength of the evidence on which [the defendant's] detention was based . . . counsel[s] against release.").

C.    The Defendant's History and Characteristics

The history and characteristics of the defendant counsel in favor of detention. Although the defendant has a minimal criminal history in the United States stemming from a state offense in Maryland for fraud, as described in further detail below, the defendant is a Nigerian national, possess multiple passports from different countries, has used a false identity to perpetrate this scheme, and does not appear to have any legitimate form of employment in the United States.

D.    The Defendant Poses a Risk of Flight

The defendant represents a particular flight risk because he maintains strong ties to multiple foreign countries, faces significant jail time and appears to have access to large amounts of capital to support his flight.

First, "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022). Here, assuming that the defendant falls within Criminal History Category I, the government's preliminary Guidelines estimate for the charged crimes is 97 to 121 months' imprisonment. As noted above, the evidence supporting these serious charges is strong. Given the jail time that the defendant faces upon conviction, he has a strong incentive to flee the jurisdiction. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee."); United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) ("possibility of a severe sentence" heightens the risk of flight).

Second, where, as here, the evidence of a defendant's guilt is strong, "it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore

may present an elevated risk of flight." Zhang, 55 F.4th at 151; United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) (Kuntz, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee."). The evidence of the defendant's guilt is overwhelming. The allegations in the indictment—which make up just a portion of the government's proof—are largely drawn from records obtained over the course of the ongoing investigation, including bank records, WhatsApp communications, audio recordings, witness testimony, and email communications that are tied to the defendants.

Third, although the defendant appears to have some ties to the United States — namely, a potential residence in Ohio— he has no known form of legitimate employment in the United States. He appears to have some family members in the United States, including a family member who is an unindicted co-conspirator in the case. Furthermore, the defendant's ties abroad provide him with an additional incentive to abscond. The defendant has passports from several different countries including Nigeria, Republic of Guyana, Republic of Centrafricaine, and the Democratic Republic of São Tomé and Príncipe. He also had numerous other identity documents in his possession at the time of his arrest including driver's licenses from several countries, as well the state of Ohio, and various identification documents indicating he is a chaplain, and economic and commercial consul for the Consulate of the Central African Republic, an adviser for São Tomé and Príncipe, and diplomatic staff for the Federal Republic of Nigeria. It is unknown whether the defendant has other forms of identification that he could use to travel domestically or internationally but, based on the number of identification documents he had in his possession, it seems likely. Furthermore, it is also unknown whether the defendant has the ability to obtain other identity documents should he be required to surrender his passports. Finally, the defendant has had frequent international travel. Based on travel records, in 2024 and 2025 alone, the defendant has known travel to Brazil, the Central African Republic, Portugal, Guyana, Japan, and South Africa.

Given the serious penalties he faces, he has every incentive to flee. See Boustani, 932 F.3d at 83 (upholding detention of defendant charged with fraud as flight risk due to the strength of the government's evidence and the defendant's "alleged deceptive actions, access to substantial financial resources, frequent international travel, complete lack of ties to the United States, and extensive ties to foreign countries without extradition"); United States v. Liebowitz, 669 F. App'x 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); United States v. Baig, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight

risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond to Mexico).

Fourth, the defendant has the means and international connections to flee if he chooses to do so. See Sabhnani, 493 F.3d at 76 ("a second factor strengthens the case for detention: defendants' ample means to finance flight"). The defendants obtained more than $20 million of victim funds and millions of dollars of those funds were transferred to foreign bank accounts including accounts in the name of or controlled by the defendants in Nigeria. The defendant's apparent ready access to these large sums of money could support his flight. Given his resources, ties to a foreign countries, and the penalties he faces, the Court should deny any application for pretrial release in this case. See, e.g., Liebowitz, 669 F. App'x at 605 (finding that the defendant posed a flight risk where "the record shows his access to substantial resources to finance flight"); United States v. Epstein, 425 F. Supp. 3d 306, 324 (S.D.N.Y. 2019) (finding defendant was "classic flight risk" given his "limited family ties to the United States, his residence in Paris, his extensive overseas travel, his significant wealth and his substantial resources (including private planes), and the potential 45 year term of imprisonment that may be imposed should there be a conviction in this case"); United States v. Zarrab, 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (citing the defendant's "significant wealth and his substantial resources" as another factor that supported detention).

IV.    Conclusion

For these reasons, the government respectfully submits that it has demonstrated, by at least a preponderance of the evidence, that the defendant poses a significant risk of flight and respectfully requests that the Court enter a permanent order of detention.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/
Andy Palacio
Assistant U.S. Attorney
(718) 254-76215

cc:    Clerk of Court (RML)
Defense Counsel (via ECF and email)



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 15, 2025

<u>By ECF and E-mail</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: United States v. Vickie Smith
       <u>Criminal Docket No. 25-MJ-270</u>

Dear Judge Levy:

    The defendant, Vicke Smith, is scheduled to for an initial appearance today pursuant to Fed. R. Crim. P. 5 today on an indictment issued from the District of Idaho, which charges her with: (i) wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349; (ii) wire fraud, in violation of Title 18, United States Code, Section 1343; (iii) money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and (iv) money laundering, in violation of Title 18, United States Code, Section 1957.  <u>See</u> ECF No. 4 (Case No. 1:25-cr-00272-BLW, District of Idah).  The defendant, along with her co-defendant Tochukwu Godwin Nwaneri, were arrested on September 13, 2025 at John F. Kennedy International Airport just prior to boarding an international flight to Morrocco, continuing on to Abuja, Nigeria. The defendant will make her first appearance this afternoon before Your Honor. The government respectfully submits this letter in support of its application for an order of detention.

    As described below and in the indictment, the defendant and her co-defendant, Nwaneri, perpetrated an advanced-fee fraud scheme that resulted in more than $20 million of losses by a victim located in the District of Idaho.  Detention is necessary here because the defendant presents a serious risk of flight due to the nature of the charged conduct, the penalties she faces, and the strong evidence of her guilt, the history and characteristics of the defendant, and her apparent international ties.

I. <u>Legal Standard</u>

    Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence, <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

## II.    Proffered Facts Regarding the Defendant's Crimes

The government proffers the following facts concerning the charges at issue and pretrial detention. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing).

Beginning in or around August 2023 and continuing through present, the defendant participated in an advanced fee fraud scheme targeting the victim, business owner in Caldwell, Idaho. Beginning in or around mid- 2023, the victim began seeking funding for his businesses through debt financing. The victim was introduced to Smith's co-defendant, Nwaneri, who was posing as "Dr. Simon Godwin." Nwaneri claimed he could facilitate a $140 million loan from a Singapore-based investment group in exchange for various advance fee payments. Smith, using the name "Nina Cheliyan," posed as, among other things, an underwriter for the Singapore group that was purporting to fund the loan to the victim. Between November 2023 and April 2025, Smith and Nwaneri tricked the victim into sending more than twenty wire transfers to various domestic and foreign bank accounts, totaling more than $20 million. Nwaneri and Smith provided the victim with various false explanations about the purposes of the funds including payments for multiple risk analysis reports, "logistic fees," 2% bond requirements, legal fees, and fees to release the purported funds from various bank accounts. In reality, as Nwaneri and Smith knew, there were no loan funds to be disbursed to the victim and the various payments the victim sent pursuant to the defendants' instructions were used for the defendant's personal expenses, purchase of assets such as luxury cars and real property, and transferred to foreign bank accounts, including accounts in the United Kingdom, China, and Nigeria.

## III.    Argument

Here, the Bail Reform Act factors counsel strongly in favor of detention. The government has met its burden to show by a preponderance of the evidence that if released, the defendant poses a serious flight risk.

### A.    Nature of the Crimes Charged

The nature and circumstances of the charged crimes —wire fraud conspiracy, money laundering conspiracy, wire fraud, and money laundering — are very serious. The defendant, using a false name to conceal her identity, participated in a fraud scheme to defraud the victim by stealing more than $20 million. The defendant and her co-defendant, Nwaneri, directed the victim to transfer funds to numerous different accounts — including an account held in the name of a purported charity, an account held in the name of a purported marketing company controlled by Smith— and then frequently transferred those funds to other accounts

2

to conceal the location, source, and nature of those funds. Other times, the defendants used the funds to purchase assets such as a Mercedez Benz, Range Rover, BMW, and real property. The defendants lied to the victim, claiming that the victim was under investigation by foreign authorities in order to pressure the victim into continuing to send funds. And even once the fraud was detected in May 2025 by legal authorities abroad and in the U.S., the defendants urged the victim to lie to the authorities in an effort to continue obtaining funds from the victim and told the victim he would go to jail if he told the truth. The defendants also pressured the victim to lie to his domestic banks about the source of the funds and to send letters explaining that the funds he transferred to the defendants were for legitimate purposes.

B.    The Weight of the Evidence

The evidence that the defendants defrauded the victim through an advanced fee scheme is strong. The evidence in this case includes: (1) witness testimony and records about the fraudulent conduct; (2) audio recordings; (3) WhatsApp and email communications; and (4) IP address records. See United States v. Rounds, 2015 WL 6604007, at *1 (2d Cir. Oct. 30, 2015) (finding that the "gravity of the charges and the strength of the evidence on which [the defendant's] detention was based . . . counsel[s] against release.").

C.    The Defendant's History and Characteristics

The history and characteristics of the defendant counsel in favor of detention. Although the defendant has no known criminal history in the United States, as described in further detail below, the defendant used a false identity to perpetrate this scheme, has a Nigerian passport, frequently travels internationally, including to Nigeria, and does not appear to have any legitimate form of employment in the United States. See United States v. Rowe, No. 02 CR. 756 LMM, 2003 WL 21196846, at *2 (S.D.N.Y. May 21, 2003) (ordering detention despite defendant's limited criminal history).

D.    The Defendant Poses a Risk of Flight

The defendant represents a particular flight risk because she faces significant jail time, appears to have significant foreign ties, and appears to have access to large amounts of capital to support her flight.

First, "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022). Here, assuming that the defendant falls within Criminal History Category I, the government's preliminary Guidelines estimate for the charged crimes is 97 to 121 months' imprisonment. As noted above, the evidence supporting these serious charges is strong. Given the jail time that the defendant faces upon conviction, she has a strong incentive to flee the jurisdiction. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee."); United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) ("possibility of a severe sentence" heightens the risk of flight).

3

Second, where, as here, the evidence of a defendant's guilt is strong, "it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight." Zhang, 55 F.4th at 151; United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) (Kuntz, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee."). The evidence of the defendant's guilt is overwhelming. The allegations in the indictment—which make up just a portion of the government's proof—are largely drawn from records obtained over the course of the ongoing investigation, including bank records, WhatsApp communications, audio recordings, witness testimony, and email communications that are tied to the defendants.

Third, although the defendant appears to have some ties to the United States — namely, a potential residence in Arizona— she has no known form of legitimate employment in the United States. The defendant has four adult children in the United States from a previous marriage. Furthermore, the defendant's ties abroad provide her with an additional incentive to abscond. At the time of her arrest, in addition to a U.S. passport, the defendant had in her possession a Nigerian passport issued in her name. She also had a passport from the Republic of Guyana issued in the name of "Dericka Mc Callum-Prescott" which appears to bear Smith's photograph. Similarly, she had a driver's license from the Republic of Guyana issued in the name of "Dericka Mc Callum" but also bearing what appears to be Smith's photo. It is unknown whether the defendant has other forms of identification that she could use to travel domestically or internationally but, based on the two forms of identification documents bearing someone else's name that she had in her possession, the defendant appears to have the ability to obtain false identity documents. Furthermore, it is also unknown whether the defendant has the ability to obtain other identity documents should she be required to surrender her passports. Smith also appears to have attempted to conceal the location of her residence in Arizona by using a UPS store as her address on her driver's license and providing that same address to Customs and Border Patrol during her arrest despite admitting, during a post-arrest interview, that she maintained an actual residence in Arizona. Furthermore, the defendant's ties abroad provide her with an additional incentive to abscond. The defendant frequently traveled internationally. For example, in 2024 and 2025, travel records indicate that the defendant traveled to Nigeria six times, Guyana, the United Kingdom, Central African Republic, China, Malaysia, Jamaica, Japan, Mexico, and Uganda.

Given the serious penalties she faces, she has a strong incentive to flee. See Boustani, 932 F.3d at 83 (upholding detention of defendant charged with fraud as flight risk due to the strength of the government's evidence and the defendant's "alleged deceptive actions, access to substantial financial resources, frequent international travel, complete lack of ties to the United States, and extensive ties to foreign countries without extradition"); United States v. Liebowitz, 669 F. App'x 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); United States v. Baig, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order

in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond to Mexico).

Fourth, the defendant has the means and international connections to flee if she chooses to do so. See Sabhnani, 493 F.3d at 76 ("a second factor strengthens the case for detention: defendants' ample means to finance flight"). The defendants obtained more than $20 million of victim funds and millions of dollars of those funds were transferred to foreign bank accounts, including transfers to bank accounts held in the defendants name or controlled by the defendant in Nigeria. The defendant's ties to a foreign jurisdiction (Nigeria), and her apparent ready access to these large sums of money could support her flight. Given her resources and the penalties she faces, the Court should deny any application for pretrial release in this case. See, e.g., Liebowitz, 669 F. App'x at 605 (finding that the defendant posed a flight risk where "the record shows his access to substantial resources to finance flight"); United States v. Epstein, 425 F. Supp. 3d 306, 324 (S.D.N.Y. 2019) (finding defendant was "classic flight risk" given his "limited family ties to the United States, his residence in Paris, his extensive overseas travel, his significant wealth and his substantial resources (including private planes), and the potential 45 year term of imprisonment that may be imposed should there be a conviction in this case"); United States v. Zarrab, 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (citing the defendant's "significant wealth and his substantial resources" as another factor that supported detention).

## IV.    Conclusion

For these reasons, the government respectfully submits that it has demonstrated, by at least a preponderance of the evidence, that the defendant poses a significant risk of flight and respectfully requests that the Court enter a permanent order of detention.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    ___/s/_____
Andy Palacio
Assistant U.S. Attorney
(718) 254-76215

cc:    Clerk of Court (RML)
Defense Counsel (via ECF and email)

AO 470 - EDNY (Rev. 03/01/2023)

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 25 MJ 270 |
| Vickie Smith | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## ORDER SCHEDULING A DETENTION HEARING

Upon motion of the _____defendant_____, a detention hearing under 18 U.S.C. § 3142(f) is scheduled as follows:

| | |
|---|---|
| Place: 225 Cadman Plaza East<br>Brooklyn, NY 11201 | Courtroom: 2A |
| | Date* and Time: 9/16/25 |

**IT IS ORDERED:** Pending the hearing, the Defendant shall be detained in the custody of the United States Marshal or any other authorized officer and must be produced for the hearing at the time, date, and place set forth above.

Date: 9/15/25

_____
*Judge's signature*
Robert Levy

_____
*Printed name and title*
Judge Robert Levy

*If not held immediately upon the Defendant's first appearance, the hearing may be continued for up to three business days upon motion of the Government, or up to five business days upon motion of the Defendant, except for good cause. 18 U.S.C. § 3142(f)(2).

18 U.S.C. § 3l42(f)(1) sets forth the grounds for a hearing that may be asserted only by the Government based on the nature of the offense. 18 U.S.C. § 3l42(f)(2) states that a hearing shall be held upon motion of the Government or of the judicial officer if there is a **serious risk** that the Defendant (a) will flee or (b) will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror.

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York    ☐

United States of America )
v. ) Case No. 25mj27v
V:cky Smith )
_____ ) Charging District's Case No.
*Defendant* )

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*    Distict of
Idaho

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been
        committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise,
        unless I have been indicted beforehand.

(5)     a hearing on any motion by the government for detention;

(6)     request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☐     an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary
        or detention hearing to which I may be entitled in this district. I request that my
        ☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by
        that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are
pending against me.

Date: 9/15/25

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Michael Wel
_____
*Printed name of defendant's attorney*

AO 466A (Rev. 12/17)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York ▾

| | |
|---|---|
| United States of America | ) |
| v. | ) Case No.  25 MJ 270 |
| Tochukwu Nwaneri | ) |
| _____ | ) Charging District's Case No.  25 cr 272 |
| *Defendant* | ) |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*  District of Idaho
_____.

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)     a hearing on any motion by the government for detention;

(6)     request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑     an identity hearing and production of the warrant.

☐     a preliminary hearing.   N/A

☑     a detention hearing.

☑     an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district.  I request that my
☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:  9·15·2025

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Jeffrey Pittell
*Printed name of defendant's attorney*

AO 94  (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York  ▾

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )    Case No.   25 MJ 270 |
| Tochukwu God win Nwaneri | ) |
| _____ | )    Charging District's |
| *Defendant* | )    Case No.   25 CR 272 BLW |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ District of __Idaho__ ,

*(if applicable)* _____ division.  The defendant may need an interpreter for this language:

_____ .

The defendant:   ☐ will retain an attorney.

            ☒ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date: __9/15/25__

                              _____
                                     *Judge's signature*

                            Judge Robert Levy
                                     *Printed name and title*

KTF:AP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

        - against -

VICKIE SMITH,
TOCHUKWU GODWIN NWANERI,
      also known as, "Dr. Simon Godwin" and
      "Tochil Nwaneri,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REMOVAL TO THE
DISTRICT OF IDAHO**

(Fed. R. Crim. P. 5)

No. 25-MJ-270

EASTERN DISTRICT OF NEW YORK, SS:

        NICHOLAS SCHLERETH, being duly sworn, deposes and states that he is a

Special Agent with the United States Secret Service ("USSS"), duly appointed according to law

and acting as such.

        On or about September 10, 2025, the United States District Court for the District

of Idaho issued a warrant for the arrest of the defendants VICKIE SMITH and TOCHUKWU

GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri" for violating

Title 18, United States Code, Sections 1349 (conspiracy to commit wire fraud), 1343 (wire

fraud), 1956(h) (money laundering conspiracy) and 1957 (money laundering).

        The source of your deponent's information and the grounds for his belief are as

follows:[1]

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.      On or about September 9, 2025, a grand jury sitting in the District of Idaho returned an indictment charging the defendants VICKIE SMITH and TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri," charging them with violations of Title 18, United States Code, Sections 1349 (conspiracy to commit wire fraud), 1343 (wire fraud), 1956(h) (money laundering conspiracy) and 1957 (money laundering).   A true and correct copy of the indictment is attached as Exhibit 1.

2.      In connection with the indictment, on or about September 10, 2025, the United States District Court for the District of Idaho issued a warrant for the arrest of the defendants VICKIE SMITH and TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri."   A true and correct copy of the arrest warrants are attached as Exhibit 2.

3.      On or about September 13, 2025, the defendants VICKIE SMITH and TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri," were arrested at JFK International Airport.

4.      At the time of her arrest, law enforcement officers compared the physical appearance of the defendant VICKIE SMITH to a photograph of SMITH in her Nigerian and American passports, and she appeared consistent with the person depicted in the photograph. SMITH subsequently confirmed her name and date of birth, which matched the name and date of birth of the VICKIE SMITH wanted in the District of Idaho.

5.      At the time of his arrest, law enforcement officers compared the physical appearance of the defendant TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri" to a photograph of NWANERI in his Nigerian passport, and he appeared consistent with the person depicted in the photograph.   NWANERI subsequently

confirmed his name and date of birth, which matched the name and date of birth of the TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri," wanted in the District of Idaho.

      6.    Based on the foregoing, I submit that there is probable cause to believe that the defendants are the VICKIE SMITH and TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri," who are wanted by the District of Idaho.

      WHEREFORE, your deponent respectfully requests that defendants VICKIE SMITH and TOCHUKWU GODWIN NWANERI, also known as, "Dr. Simon Godwin" and "Tochil Nwaneri," be removed to the District of Idaho so that they may be dealt with according to law.

                    S/ Nicholas Schlereth

                    _____
                    NICHOLAS SCHLERETH
                    Special Agent, United States Secret Service

Sworn to before me this
15__ day of September, 2025

                    S/ Robert Levy

_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# EXHIBIT 1

JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
BRITTNEY CAMPBELL, NORTH CAROLINA STATE BAR NO. 31433
DARCI W. CRANE, IDAHO STATE BAR NO. 8852
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
1290 W. MYRTLE ST., SUITE 500
BOISE, I.D. 83702-7788
TELEPHONE: (208) 334-1211

**U.S. COURTS**

SEP 0 9 2025

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>VICKIE SMITH and TOCHUKWU GODWIN NWANERI aka DR. SIMON GODWIN, TOCHIL NWANERI,<br><br>    Defendants. | Case No. 1:25 cr 272 BLW<br><br>**INDICTMENT**<br><br>18 U.S.C. § 1343<br>18 U.S.C. § 1349<br>18 U.S.C. § 1956(h)<br>18 U.S.C. § 1957<br>18 U.S.C. § 981(a)(1)(A)<br>18 U.S.C. § 981(a)(1)(D)<br>18 U.S.C. § 982(a)(1)<br>18 U.S.C. § 982(a)(2)(A)<br>28 U.S.C. § 2461 |

The Grand Jury charges:

At times relevant to this Indictment:

### Introduction and Background

1.     As described in this Indictment, an "advanced-fee scheme" was a type of fraudulent scheme in which the victim was induced to pay certain fees on the false belief that the payments must first be made to receive a promised good or service, such as a loan

**INDICTMENT - 1**

or investment, when in reality the good or service was never going to be, and never was in fact, provided.

<u>Relevant Entities and Individuals</u>

2.    African Global Development Initiative, also known as AGDI, was a purported charitable organization founded by defendants TOCHUKWU NWANERI, using the name "Ambassador Tochil Nwaneri," and VICKIE SMITH.  AGDI claimed to be headquartered in Columbus, Ohio and New York, with offices located in Peoria, Arizona and Lagos, Nigeria.  AGDI advertised online that it was "Africa's emerging leader in energy and industrial development service sector," with a "leading role in infrastructure development."  SMITH and NWANERI opened and controlled various bank accounts in the name of AGDI that were used to receive and transmit funds the defendants obtained from Victim-1.

3.    Lady V Promotions was a shell entity that was purportedly a marketing agency based in Peoria, Arizona owned by SMITH.  Lady V Promotions controlled multiple bank accounts which received and transmitted funds the defendants obtained from Victim-1.

4.    Investment Group-1, also referred to in the scheme as the "Singapore Group," was a purported investment group based Singapore that claimed to, among other things, provide private lending to companies needing to raise capital through debt financing.

5.    Defendant TOCHUKWU GODWIN NWANERI was a Nigerian national and, at times, resided in the state of Ohio.

6.    Defendant VICKIE SMITH was a resident of Arizona.

7.    The defendants acted with others both known and unknown to the grand jury,

including but not limited to the following:

> a. Unindicted Conspirator 1 ("UC-1"), a resident of Ohio.
>
> b. Unindicted Conspirator 2 ("UC-2"), a resident of Georgia.
>
> c. Unindicted Conspirator 3 ("UC-3"), a resident of Maryland.
>
> d. Unindicted Conspirator 4 ("UC-4"), a resident of Georgia.

8. Victim-1 was a resident of Idaho and the owner of a large construction firm based in Idaho that specialized in various sectors of the construction industry including renewable energy, industrial power, water, wastewater systems, and mining construction.

## COUNT ONE
### Conspiracy to Commit Wire Fraud
### 18 U.S.C. § 1349

9. The Grand Jury re-alleges and incorporates by reference the factual allegations in paragraphs one through eight of this Indictment.

10. Beginning in or around at least August 2023 and continuing to at least in or around September 2025, in the District of Idaho and elsewhere, the defendants, VICKIE SMITH and TOCHUKWU GODWIN NWANERI, together with others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit wire fraud, that is: devise and intend to devise a scheme and artifice to defraud, as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, in so doing, caused interstate and foreign wire communications to be made, in furtherance of the scheme and artifice to defraud, in violation of 18 U.S.C. § 1343.

### Object of the Conspiracy

11.     It was an object of the conspiracy for the defendants, VICKIE SMITH and TOCHUKWU GODWIN NWANERI, and their conspirators to unlawfully enrich themselves by falsely promising to provide Victim-1 with a $140 million loan in exchange for various advance fees that exceeded $20 million, and to conceal their scheme by (i) claiming various impediments to providing the promised loan which necessitated additional payments from Victim-1; and (ii) lulling Victim-1 with false assurances about their promised financial services, access to capital, and ability to provide the funds.

### Manner and Means

12.     The defendants, VICKIE SMITH and TOCHUKWU GODWIN NWANERI, and their conspirators, carried out the conspiracy through the following manner and means, among others:

    a.      Utilizing interstate wires to (1) communicate via WhatsApp, text messages, phone calls, and email to induce Victim-1 to pay various purported fees associated with Victim-1's loan; (2) communicate with Victim-1 about including false descriptions on the financial wires he sent to the defendants and to financial accounts as instructed by the defendants; (3) fraudulently obtain payments from Victim-1, including wire transfers from Victim-1's bank accounts to domestic and international bank accounts controlled by the defendants and their conspirators; (4) wire fraudulently obtained proceeds to other conspirators, including family members, and other bank accounts controlled by the

INDICTMENT - 4

conspirators; and (5) instruct Victim-1 to lie to financial institutions and law enforcement about the source of the funds deposited in to the accounts in question;

b.      Using false names when interacting with Victim-1 in order to conceal their true identities, including NWANERI using the identity Dr. Simon Godwin and SMITH using the name Nina Cheliyan, among others;

c.      Using false and fraudulent pretenses, representations, and promises, the defendants and conspirators induced Victim-1 to enter into a purported lending agreement in which Victim-1 was promised a loan for various projects related to Victim-1's business;

d.      Claiming that Victim-1 was required to pay fees for risk analysis and due diligence reports as well as millions of dollars in other fees in order to obtain the loan he was seeking;

e.      Inducing Victim-1 to pay the various advance fees by leading Victim-1 to believe that the Singapore Group had the money to lend when the defendants knew that the "Singapore Group" did not have the capital to make the loans, and instead of using the advanced fees for the purposes they told Victim-1, the defendants spent the fees on various personal expenses and wired the funds to family members and offshore bank accounts;

f.      Falsely claiming that Victim-1's loan was tied a purported $1.3 billion Forex account, and informing Victim-1 that he was required to transfer additional funds related to the purported Forex account in order to obtain his loan;

g.      Falsely telling Victim-1 that he was under investigation for money laundering by the Singapore government in order to induce Victim-1 to send defendants additional funds to assist with transferring his purported loan funds to accounts that

**INDICTMENT - 5**

Victim-1 would ultimately be able to access when, in reality, the defendants knew there was no money laundering investigation and that there were no "loan funds" to transfer;

       h.     Depositing and causing to be deposited the fraudulently obtained funds into bank accounts under the defendants' control and then disbursing and causing to be disbursed these funds, including via wire transfers to each other individually, through their associated entities, and to other conspirators;

       i.     Instructing Victim-1 to lie to banks and law enforcement about the purpose of the wires Victim-1 sent at the defendants' direction, including claiming the funds were for construction projects and charitable contributions;

       j.     Throughout the conspiracy and scheme, the defendants sent emails, WhatsApp messages, and text messages in which they falsely represented to Victim-1 the status of his funding and the likelihood he would receive the loan funds.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH TWENTY-NINE
### Wire Fraud
### 18 U.S.C. § 1343

13.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs one through eight of this Indictment.

14.     Beginning in or around at least August 2023 and continuing until at least in or around September 2025, in the District of Idaho and elsewhere, the defendants, VICKIE SMITH and TOCHUKWU GODWIN NWANERI, knowingly participated in, devised, and intended to devise, a scheme and artifice to defraud Victim-1 as to material matters and

**INDICTMENT - 6**

to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means

15. To further the objects and goals of the scheme, the defendants, SMITH and NWANERI, carried out the scheme through the manner and means described in paragraph 12 of this Indictment, among others.

## Executions of the Scheme

16. On or about the dates set forth below, in the District of Idaho and elsewhere, the defendants, SMITH and NWANERI, for the purpose of executing, and attempting to execute the scheme described above, did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate commerce the writings, signs, signals and sounds described below for each count, each transmission constituting a separate count of this Indictment:

| Count | Date (on or about) | Interstate Wire Communication |
|:---:|:---:|:---|
| 2 | October 31, 2023 | WhatsApp Message from NWANERI to Victim-1 stating his risk management report was completed and instructing Victim-1 that he must make a payment to a bank account in the Netherlands held in the name of AGDI before the report would be released. |
| 3 | November 2, 2023 | Wire transfer in the amount of $55,740 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Wise Europe S.A. |
| 4 | November 17, 2023 | Wire transfer in the amount of $84,997.50 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Wise Europe S.A. |
| 5 | December 23, 2023 | Email from SMITH using email account Ninacheliyan@gmail.com to Victim-1 stating 2% bond required to close $140,000,000 loan |

| Count | Date (on or about) | Interstate Wire Communication |
|-------|-------------------|-------------------------------|
| 6 | December 26, 2023 | Wire transfer in the amount of $1,750,000 from Victim-1's son's business account at Umpqua Bank ending in x3637 to account held in the name of Lady V Promotions ending in x2159 at Citibank, N.A. |
| 7 | February 21, 2024 | Wire transfer in the amount of $5,000,000 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of Lady V Promotions ending in x2159 at Citibank, N.A. |
| 8 | April 17, 2024 | Email from Nina Cheliyan (pseudonym used by VICKIE SMITH) using account Ninacheliyan@gmail.com to Victim-1 at email account x instructing Victim-1 to make "logistic fees" in two separate payments |
| 9 | April 19, 2024 | Wire transfer in the amount of $87,000 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Bank of Arizona ending in x1722 |
| 10 | April 19, 2024 | Wire transfer in the amount of $149,487.79 from Victim-1's business account at Zions Bank ending in x0106 to account ending in held in the name of AGDI, Inc. at Community Federal Savings Bank ending in x8089 |
| 11 | May 3, 2024 | Wire transfer in the amount of $146,834 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Bank of Arizona ending in x1722 |
| 12 | May 3, 2024 | Wire transfer in the amount of $100,000 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Community Federal Savings Bank ending in x8089 |
| 13 | May 28, 2024 | Email from SMITH using the email account Ninacheliyan@gmail.com to Victim-1 instructing Victim-1 to use "Charitable Donation" for the description of the wire transfers he was sending pursuant to the defendants' instructions |
| 14 | May 29, 2024 | Wire transfer in the amount of $1,500,000 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Community Federal Savings Bank ending in x8089 |
| 15 | June 3, 2024 | Wire transfer in the amount of $415,000 from Victim-1's business account at Zions Bank ending in x0106 to account held in the name of AGDI, Inc. at Bank of Arizona ending in x1722 |

**INDICTMENT - 8**

| Count | Date (on or about) | Interstate Wire Communication |
|-------|--------------------|-------------------------------|
| 16 | December 16, 2024 | Wire transfer in the amount of $1,200,000 from Victim-1's business account at Umpqua Bank ending in x4738 to account held in the name of Lady V Promotions ending in x2159 at Citibank, N.A. |
| 17 | January 9, 2025 | Email from SMITH using email account Ninacheliyan@gmail.com to Victim-1 informing Victim-1 that his company had accrued "fines" of $5,989,674.30 which must be paid within three business days into to separate accounts. |
| 18 | January 12, 2025 | Email from SMITH using email account Ninacheliyan@gmail.com to Victim-1 informing Victim-1 that the following deposits had to occur in the next 48 hours: (1) a deposit of $2,694,837 to Lady V Promotions with a stated purpose of "Kuala Lumpur Expansion TTKYZ025" and (2) a $3,294,837 deposit to the AGDI, Inc account with a stated purpose of "Scholarships Way Forward Project, NG23004." |
| 19 | January 13, 2025 | Wire transfer in the amount of $2,694,837.30 from Victim-1's business account at Umpqua Bank ending in x4738 to account held in the name of Lady V Promotions ending in x2159 at Citibank, N.A. |
| 20 | January 13, 2025 | Wire transfer in the amount of $3,294,837 from Victim-1's business account at Umpqua Bank ending in x4738 to account held in the name of AGDI, Inc. at Bank of Arizona ending in x1722 |
| 21 | February 3, 2025 | Wire transfer in the amount of $100,000 from Victim-1's business account at Umpqua Bank ending in x3900 to account held in the name of Botha and Barendrecht Inc. at Firstrand Bank LTD in South Africa ending in x6462 |
| 22 | February 3, 2025 | Wire transfer in the amount of $120,000 from Victim-1's business account at Umpqua Bank ending in x3900 to account held in the name of Stella MMATLE Services at Firstrand Bank Ltd ending in x4226 |
| 23 | February 18, 2025 | Wire transfer in the amount of $370,000 from Victim-1's business account at Umpqua Bank ending in x3900 to account held in the name of Botha and Barendrecht Inc. at Firstrand Bank LTD in South Africa ending in x6462 |
| 24 | March 24, 2025 | Wire transfer in the amount of $1,006,953.05 from Victim-1's business account at Umpqua Bank ending in x4738 to account held in the name of Shaoxing Haoyue Import and Export at Agricultural Bank of China Limited ending in x0066 |

**INDICTMENT - 9**

| Count | Date (on or about) | Interstate Wire Communication |
|---|---|---|
| 25 | March 24, 2025 | Wire transfer in the amount of $993,046.95 from Victim-1's business account at Umpqua Bank ending in x4738 to account held in the name of Yiwu Hangtai Supply Chain Managemen at Zhejiang Tailong Commercial Bank Co ending in x7550 |
| 26 | March 27, 2025 | Wire transfer in the amount of $275,000 from Victim-1's business account at Umpqua Bank ending in x3900 to account held in the name of Nexus Capital Partners (PTY) LTD at Firstrand Bank LTD in South Africa ending in 3340 |
| 27 | April 23, 2025 | Wire transfer in the amount of $866,288 from Victim-1's business account at Umpqua Bank ending in x3900 to account held in the name of Dongsheng Barter (Yiwu) Digital Tec ending in x5827 at Industrial and Commercial Bank of China |
| 28 | April 24, 2025 | Wire transfer in the amount of $495,000 from Victim-1's business account at Umpqua Bank ending in x3900 to account held in the name of Shenzhen Huben Technology Co., Ltd ending in x0988 at China Merchants Bank CO LTD |
| 29 | April 25, 2025 | WhatsApp Message exchange between NWANERI to Victim-1 in which NWANERI stated to Victim-1 that they cannot let the U.S. Secret Service interfere with the South Africa bank transactions and instructing Victim-1 to inform the Secret Service that the money Victim-1 sent to China was for the "purchase of pipes" and further informing the Victim that "if you tell them what really happened we are all going to jail" |

All in violation of 18 U.S.C. § 1343.

## COUNT THIRTY
**Money Laundering Conspiracy**
**18 U.S.C. § 1956(h)**

17.     The Grand Jury re-alleges and incorporates by reference the factual allegations in paragraphs one through eight, 12, and 14 through 16 of this Indictment.

18.     Beginning at least as early as in or around August 2023, the exact date being unknown, and continuing through in or about April 2025, in the District of Idaho and elsewhere, the defendants, VICKIE SMITH and TOCHUKWU GODWIN NWANERI,

**INDICTMENT - 10**

did combine, conspire, confederate, and agree with others known and unknown to the

Grand Jury, including UC-1, UC-2, UC-3, and UC-4, to commit money laundering

offenses, in violation of 18 U.S.C. §§ 1956 and 1957, as follows:

    a.   to knowingly conduct, attempt to conduct, and aid and abet others to

        conduct, financial transactions that affected interstate and foreign commerce,

        which involved the proceeds of specified unlawful activity, that is, proceeds

        from Wire Fraud, in violation of 18 U.S.C. § 1343, knowing that said

        transactions were designed in whole or in part to conceal and disguise the

        nature, location, source, ownership, and control of the proceeds of the

        specified unlawful activity, and that while conducting such financial

        transactions, knew that the property involved in the financial transactions

        represented the proceeds of some form of specified unlawful activity, in

        violation of 18 U.S.C. § 1956(a)(1)(B)(i);

    b.   to transport, transmit, and transfer, and attempt to transport, transmit, and

        transfer, and aid and abet others to transport, transmit, and transfer, monetary

        instruments and funds involving the proceeds of specified unlawful activity,

        that is, proceeds from Wire Fraud, in violation of 18 U.S.C. § 1343, from

        places in the United States to or through places outside the United States,

        knowing that the monetary instruments and funds involved in the

        transportation, transmission, and transfer represented the proceeds of some

        form of unlawful activity and knowing that such transportation, transmission

        and transfer was designed in whole or in part, to conceal or disguise the

nature and source of the proceeds of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and

c. to knowingly engage and attempt to engage in the monetary transactions by, through, and to a financial institution, affecting interstate commerce, knowing that such transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is Wire Fraud, in violation of 18 U.S.C. §1343, in violation of 18 U.S.C. § 1957.

### Manner and Means

19. The allegations set forth in paragraph 12 are realleged as if fully set forth herein.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS THIRTY-ONE THROUGH SEVENTY-ONE
### Money Laundering
### (Engaging in Monetary Transactions in Property Derived from Wire Fraud)
### 18 U.S.C. § 1957

20. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs one through eight, 12, and 14 through 16 of this Indictment.

21. On or about the dates listed below, in the District of Idaho and elsewhere, the defendants, VICKIE SMITH and TOCHUKWU GODWIN NWANERI, aided and abetted each other and by others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the monetary transactions indicated below, by, through, and to a financial institution, affecting interstate commerce, knowing that such transactions

involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. §1343, each transaction constituting a separate count of this Indictment:

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|-------|--------------------|------------------|--------------------------------------|
| 31 | January 5, 2024 | $104,685.00 | Cashier's check No. 36100440 funded from Lady V Promotion's Citibank account ending in x2159 made payable to Car Auction Business-1 |
| 32 | January 11, 2024 | $130,000.00 | Wire transfer from Lady V Promotion's Citibank account ending in x2159 to AGDI's Zions Bancorp account No. x1722 |
| 33 | January 12, 2024 | $128,408.02 | Purchase of 2024 Mercedes Benz using Cashier's check funded from AGDI Zions Bancorp account ending in x1722 VIN: 4JGFD8KB1RB080949 |
| 34 | January 16, 2024 | $97,506.00 | Wire transfer from Lady V Promotion's Citibank account ending in. x2159 to STP Gateway Investments JP Morgan Chase Account No. x6653 |
| 35 | January 19, 2024 | $75,803.09 | Wire transfer from STP Gateway Investments' JP Morgan Chase account ending in x6653 to Title Agency-1 in Toledo, Ohio. File #840907 |
| 36 | February 6, 2024 | $50,134.00 | Wire transfer from Lady V Promotion's Citibank account ending in x2159 to STP Gateway Investments JP Morgan Chase account ending in x6653 |
| 37 | February 12, 2024 | $610,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to African Global Development Initiative's Truist account ending in x2790 |

**INDICTMENT** - 13

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|---|---|---|---|
| 38 | February 15, 2024 | $584,360.00 | Wire transfer from African Global Development Initiative's Truist account ending in x2790 to Law Firm-1's First Citizens Bank account ending in x7370 Purpose: purchase of real property Address: 1283 Blairwood Ct, Atlanta, GA 30331 Parcel #: 14F0079LL1034 Owner: African Global Development Initiative Inc & VICKIE Lynn Smith |
| 39 | February 21, 2024 | $89,572.00 | Wire transfer from Lady V Promotions Citibank account ending in x2159 to STP Gateway Investments' JP Morgan Chase account ending in x6653 |
| 40 | March 4, 2024 | $1,709,820.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to African Global Development Initiative's Truist account ending in x2790 |
| 41 | March 18, 2024 | $50,134.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to STP Gateway Investments' JP Morgan Chase account ending in x6659 |
| 42 | April 8, 2024 | $750,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to UC-3's business Capital One account ending in x3041 |
| 43 | April 24, 2024 | $575,000.00 | Wire transfer from Lady V Promotions' Citibank account No. x2159 to UC-3's business Capital One account ending in x3041 |

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|---|---|---|---|
| 44 | May 14, 2024 | $1,066,064.21 | Wire transfer from African Global Development Initiative's Truist account ending in 2790 to Law Firm-2's account ending in x1858<br>Purpose: purchase of real property<br>Address: 4051 Annecy Dr SW, Atlanta, GA 30331<br>Parcel #14F0044LL1192<br>Legal: Lot 28N |
| 45 | May 14, 2024 | $418,869.00 | Wire transfer from African Global Development Initiative's Truist account ending in x2790 to Real Estate Company-1's Capital One account ending in x3663 |
| 46 | May 16, 2024 | $50,000.00 | Wire transfer from Lady V Promotions' Citibank account No. x2159 to Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 |
| 47 | June 26, 2024 | $750,000.00 | A check (#724) sent from UC-3's business' Capital One combined checking account ending in x4393 and savings account ending in x8582 to Regions Bank in the name A.B. |
| 48 | August 12, 2024 | $175,283.50 | Wire transfer from Lady V Promotions Citibank account ending in x2159 to Car Dealership-1's Huntington Bank account ending in x0888<br>Purchase of Vehicle<br>Vehicle: 2024 Range Rover<br>VIN: SALK19E95RA252389 |
| 49 | September 9, 2024 | $300,000.00 | Cashier's Check from African Global Development Initiative's Zions Bancorp account ending in x1722 to Lady V Promotions' First Commonwealth Bank account ending in x3292 |
| 50 | September 9, 2024 | $65,000.00 | Cashier's Check from African Global Development Initiative's Zions Bancorp account ending in x1722 to Earnwell |

**INDICTMENT** - 15

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|---|---|---|---|
| | | | MFB LLC's JP Morgan Chase account ending in x6356 |
| 51 | October 2, 2024 | $175,000.00 | Wire transfer from African Global Development Initiative's Zions Bancorp account ending in x1722 to Earnwell MFB LLC's JP Morgan Chase account ending in x6356 |
| 52 | October 10, 2024 | $50,000.00 | Wire transfer from Earnwell MFB LLC's JP Morgan Chase account ending in x6356 to Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 |
| 53 | October 31, 2024 | $50,000.00 | Wire transfer from Earnwell MFB LLC's JP Morgan Chase account ending in x6356 to Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 |
| 54 | November 1, 2024 | $200,000.00 | Cashier's Check from Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 to Car Auction Business -1 |
| 55 | November 8, 2024 | $258,548.42 | Wire transfer from Lady V Promotions' First Commonwealth Bank account ending in x3292 to Title Agency -2 Bank United account ending in x1370 Purpose: purchase of real estate Address: 6237 Needletail Rd, Columbus OH 43250 Parcel #010-287422-00 Legal Description: Preserve Crossing Condominium 14th AMD Bld 32 Unit 32-6237 |

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|---|---|---|---|
| 56 | December 5, 2024 | $320,151.44 | Wire transfer from African Global Development Initiative's Zions Bancorp account ending in x1722 to Title Company-3<br>Purpose: Purchase a House<br>Address: 1718 W Colter Street #162, Phoenix, AZ 85015<br>Parcel #15636146<br>Deed #20240654503 |
| 57 | December 5, 2024 | $160,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to UC-3's business Capital One account ending in x3041 |
| 58 | January 3, 2025 | $375,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 |
| 59 | January 17, 2025 | $1,800,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to Lady V Promotions' United Bank of Africa account ending in x8195 located in Lagos, Nigeria |
| 60 | January 27, 2025 | $400,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to VICKIE Smith's Ally Bank account ending in. x8286 |
| 61 | January 27, 2025 | $500,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to UC-3's business Capital One account ending in. x3041 |
| 62 | January 27, 2025 | $500,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 |

INDICTMENT - 17

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|---|---|---|---|
| 63 | February 19, 2025 | $100,000.00 | Wire transfer from African Global Development Initiative's Zions Bancorp account no. x1722 to African Global Development Initiative's Truist account ending in x2790 |
| 64 | February 24, 2025 | $250,000.00 | Wire transfer from UC-3's business Capital One account ending in x5217 to Earnwell Microfinance Bank Limited's account at Fidelity Bank Plc ending in x1703 located in Lagos, Nigeria |
| 65 | March 25, 2025 | $25,000.00 | Wire transfer from African Global Development Initiative's Zions Bancorp account ending in x1722 to Mitchbrey Auto Gallery LLC's JP Morgan Chase account ending in x5652 |
| 66 | March 31, 2025 | $50,000.00 | Wire transfer from African Global Development Initiative's Zions Bancorp account ending in x1722 to Motion Motors LLC's Truist account ending in x5422 |
| 67 | March 31, 2025 | $500,000.00 | Wire transfer from African Global Development Initiative's Zions Bancorp account ending in x1722 to African Global Development Initiative's Truist account ending in x2790 |
| 68 | April 10, 2025 | $575,000.00 | Cashier's Check from African Global Development Initiative's Zions Bancorp account ending in x1722 to OpenGAGA Group Inc's JP Morgan Chase account ending in x2169 |
| 69 | April 10, 2025 | $650,000.00 | Cashier's Check from African Global Development Initiative's Zions Bancorp account ending in x1722 to Earnwell MFB LLC's JP Morgan Chase account ending in x6356 |
| 70 | April 16, 2025 | $105,000.00 | Wire transfer from Lady V Promotions' Citibank account ending in x2159 to |

INDICTMENT - 18

| Count | Date (on or about) | Amount (approx.) | Description of Monetary Transaction |
|-------|--------------------|------------------|-------------------------------------|
|       |                    |                  | Motion Motors LLC's Truist account ending in x5422 |
| 71    | June 2, 2025       | $45,902.00       | Wire transfer from African Global Development Initiative's Truist account ending in x2790 to Auto Dealership-2's Truist account ending in x6895 |

All in violation of 18 U.S.C. § 1957.

## CRIMINAL FORFEITURE ALLEGATION(S)

### Fraud Forfeiture
### U.S.C. §§ 981(a)(1)(D), 982(a), and 21 U.S.C. § 2461

Upon conviction of the offenses alleged in Counts One through 30 of this Indictment, the defendants shall forfeit to the United States any and all property, real and personal, tangible and intangible, consisting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the foregoing offenses. The property to be forfeited includes, but is not limited to, the following:

1. Real Property Subject to Forfeiture.  The real property, located as set forth below, including the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, and all equity in the same, as proceeds of the crime of conviction and derived from, and traceable to, proceeds:

  a. 1283 Blairwood Ct, Atlanta, GA;

  b. 4051 Annecy Dr. SW, Atlanta, GA 30331/ APN: 14F-0044-LL-119-2; Subdivision: Nisky Lake Farms; Legal: Lot 28N;

     c.    6237 Needletail Rd, Columbus, OH; Parcel #010-287422-00; Legal Description: Preserve Crossing Condominium 14th AMD Bldg. 32 Unit 32-6237;

     d.    1718 W Colter Street, #162, Phoenix, AZ 85015; APN156-36-147, Deed #20240654503;

2.    <u>Personal Property</u>. The personal property, as set forth below, as proceeds of the crime of conviction and derived from, and traceable to, proceeds:

     a.    2024 Mercedes Benz GLE AMG 63 S Coup - VIN: 4JGFD8KB1RB080949;

     b.    2024 Range Rover, VIN: SALK19E95RA252389.

3.    <u>Unrecovered Cash Proceeds and/or Facilitating Property.</u> The defendants obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, and property the defendants used to facilitate the offense, but based upon actions of the defendants, the property was transferred, diminished, comingled, or is otherwise unavailable. The defendants obtained and controlled at least $21,483,321.25 in unrecovered forfeitable property.

4.    <u>Substitute Assets.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of defendants" up to the value of the defendants' assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

     a.    Cannot be located upon the exercise of due diligence;

     b.    Has been transferred or sold to, or deposited with, a third person;

    c.    Has been placed beyond the jurisdiction of the court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be subdivided without difficulty.

**Money Laundering Forfeiture**
**18 U.S.C. §§ 981(a)(1)(A), 982(a)(1), and 28 U.S.C. § 2461(c).**

Upon conviction of the offenses alleged in alleged in Counts 31 through 71 of this Indictment, the defendants, SMITH and NWANERI, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), § 982(a)(1), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violations; and any and all property, real and personal, tangible and intangible, used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the foregoing offenses.

1.    <u>Real Property Subject to Forfeiture:</u>  The real property, located as set forth below, including the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, and all equity in the same, as proceeds of the crime of conviction and derived from, and traceable to, proceeds:

    a.    1283 Blairwood Ct., Atlanta, GA;

    b.    4051 Annecy Dr. SW, Atlanta, GA 30331/ APN: 14F-0044-LL-119-2; Subdivision: Nisky Lake Farms; Legal: Lot 28N;

    c.    6237 Needletail Rd, Columbus, OH; Parcel #010-287422-00; Legal Description: Preserve Crossing Condominium 14th AMD Bldg. 32 Unit 32-6237;

INDICTMENT - 21

    d. 1718 W Colter Street, #162, Phoenix, AZ 85015;

     APN156-36-147, Deed #20240654503;

  2. <u>Personal Property</u>. The personal property, as set forth below, as

proceeds of the crime of conviction and derived from, and traceable to, proceeds:

    a. 2024 Mercedes Benz GLE AMG 63 S Coup - VIN:

     4JGFD8KB1RB080949;

    b. 2024 Range Rover, VIN: SALK19E95RA252389.

//

//

//

//

//

//

//

//

//

//

//

3.      <u>Substitute Assets.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of defendants" up to the value of the defendants' assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

a.      Cannot be located upon the exercise of due diligence;

b.      Has been transferred or sold to, or deposited with, a third person;

c.      Has been placed beyond the jurisdiction of the court;

d.      Has been substantially diminished in value; or

e.      Has been commingled with other property which cannot be subdivided without difficulty.

Dated this 9th day of September 2025.

A TRUE BILL

/s/ [signature on reverse]
_____
FOREPERSON

JUSTIN D. WHATCOTT
ACTING UNITED STATES ATTORNEY
By:

BRITTNEY CAMPBELL
ASSISTANT UNITED STATES ATTORNEY

INDICTMENT - 23

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

UNITED STATES OF AMERICA  **WARRANT FOR ARREST**

v.

VICKIE SMITH  1:25-cr-00272-BLW

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest **VICKIE SMITH** and bring forthwith to the

nearest magistrate judge to answer **INDICTMENT** charging with the below listed violation.

**18 U.S.C. § 1349** CONSPIRACY TO COMMIT WIRE FRAUD

**18 U.S.C. § 1343** WIRE FRAUD (Counts 2-29)

**18 U.S.C. § 1956(h)** MONEY LAUNDERING CONSPIRACY (Count 30)

18: U.S.C. § 1957 MONEY LAUNDERING (Counts 31-71)

Laura McInnes, Deputy Clerk

Name and Title of Issuing Officer



United States Courts
District of Idaho

**ISSUED**

*Laura McInnes*
*on Sep 10, 2025 8:58 am*

---

### RETURN

---

This warrant was received_____and executed with the arrest of the above-name
individual at _____.

_____

_____   _____
Signature of Arresting Officer  Date of Arrest

_____
Name & Title of Arresting Officer

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

UNITED STATES OF AMERICA        *WARRANT FOR ARREST*

v.

TOCHUKWU GODWIN NWANERI        1:25-cr-00272-BLW

AKA/ Dr. SIMON GODWIN & TOCHIL NWANERI

To:  The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest **TOCHUKWU GODWIN NWANERI** and

bring forthwith to the nearest magistrate judge to answer **INDICTMENT** charging with the below

listed violation.

**18 U.S.C. § 1349** CONSPIRACY TO COMMIT WIRE FRAUD

**18 U.S.C. § 1343** WIRE FRAUD (Counts 2-29)

**18 U.S.C. § 1956(h)** MONEY LAUNDERING CONSPIRACY (Count 30)

18: U.S.C. § 1957 MONEY LAUNDERING (Counts 31-71)

<u>Laura McInnes, Deputy Clerk</u>

Name and Title of Issuing Officer



**United States Courts
District of Idaho

ISSUED**

*Laura McInnes*
*on Sep 10, 2025 9:03 am*

---

## RETURN

---

This warrant was received_____and executed with the arrest of the above-name
individual at _____.

_____

_____        _____
Signature of Arresting Officer          Date of Arrest

_____
Name & Title of Arresting Officer